# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-18-00473-CR
_____

### TREVION JAMES PHIPPS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-03-04010-CR**

### MEMORANDUM OPINION

### Introduction

In 2018, a Montgomery County Grand Jury indicted Trevion James Phipps on a charge of possession with intent to deliver dihydrocodeinone, a controlled substance, in an amount of 28 grams or more but less than 200 grams.[1] The charges stem from a search, incident to a traffic stop for speeding, during which a state trooper found the contraband in Phipps's car. On the first day of his trial, the trial

---

[1]Tex. Health & Safety Code Ann. § 481.114.

1

court considered the motion Phipps had filed to suppress the search. In his motion, Phipps asserted the facts leading up to the stop did not show the trooper reasonably could have believed that Phipps was speeding.

Phipps raises two issues for our review. He contends the trial court erred when it (1) denied his motion to suppress and (2) failed, when instructing the jury in its charge, to advise the jury that it could disregard the evidence the trooper discovered in his car if it believed or had reasonable doubt about whether the State obtained the evidence in his car in violation of the law.[2] For the reasons explained below, we conclude Phipps's issues lack merit. We will affirm.

Background

While on patrol on the service road next to I-45 in Montgomery County, Corporal Trace Turner, an employee of the Texas Department of Public Safety, noticed a car in his mirror that was catching up to him from the rear. Suspecting the car was being driven faster than the posted speed, and while driving on the feeder road, Trooper Turner increased the speed of his patrol car in an effort to match the speed of the car that was being driven on the highway while the approaching car was closing on the patrol car from behind.

After Phipps passed the patrol car, Trooper Turner merged onto the highway, activated his lights, and stopped Phipps. Trooper Turner was the sole witness who

[2]*See* Tex. Code Crim. Proc. Ann. art. 38.23.

2

testified in the hearing conducted on Phipps's motion to suppress. During the hearing, Trooper Turner testified that, based on the pacing maneuver he described using in an effort to gage Phipps's speed, he estimated that Phipps was going 75 miles per hour. The trooper explained that 75 was ten miles over the posted speed limit on I-45, as the posted speed is 65 m.p.h. in the area where he stopped Phipps. Trooper Turner also testified that Phipps was driving at an unreasonable speed given the traffic conditions in the area where the stop occurred.

*The Law and Standard of Review*

Police officers who witness what they reasonably believe to be a traffic violation may stop and detain the car seen violating a traffic law if the officer has reasonable suspicion that the car's driver violated the law.[3] The reasonable suspicion standard applies to the decision a police officer makes to stop another car since under the Fourth Amendment, the stop is treated as a detention.[4] Trooper Turner's testimony reflects that Phipps was stopped for speeding, a traffic violation if there is evidence showing the officer stopped a car being driven "at a speed greater than is

---

[3]*See id*. art. 14.01(b) (providing that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view"); *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (explaining the record supported the trial court's finding that the police stopped the defendant for a traffic violation, which made the detention reasonable under the Fourth Amendment).

[4]U.S. CONST. amend. IV; *see also Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997).

reasonable and prudent under the circumstances then existing."[5] In proving that someone was speeding, the law provides that driving above the posted speed limit on a highway "is prima facie evidence that the speed is not reasonable and prudent and that the speed is unlawful."[6]

To prove that a police officer had a reasonable suspicion to stop someone who was speeding, the State must identify the specific and articulable facts the officer observed that led the officer to reasonably infer that the offense of speeding is or soon will occur.[7] The standard that governs whether reasonable suspicion exists is objective.[8] Consequently, our review of the testimony offered to explain why the officer detained another driver focuses on whether the facts described in the hearing would have allowed a reasonable police officer to infer that reasonable suspicion exists given the facts and circumstances described by the witnesses in the hearing.[9]

We use a bifurcated standard when asked to review a trial court's ruling on a motion to suppress.[10] In Phipps's case, after ruling on Phipps's motion, the trial court did not provide the parties with express written findings to explain the reasons it relied on when it denied Phipps's motion. Even so, in the absence of written findings,

---

[5]*See* Tex. Transp. Code Ann. §§ 542.001, 545.351(a).
[6]*Id*. § 545.352(a).
[7]*Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).
[8]*Id*.
[9]*Id*.
[10]*Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

4

we must infer "the necessary factual findings that support the trial court's ruling if the record evidence (viewed in light most favorable to the ruling) supports these implied fact findings."[11]

The record shows the trial court's decision to deny Phipps's motion hinged on the decision that court made resolving mixed questions of law and fact. As such, the trial court's ruling hinged on that court's assessment of Trooper Turner's credibility, given that he is the sole witness who testified in the suppression hearing about the circumstances that led him to stop Phipps. In reviewing rulings on mixed questions of law and fact, we give the trial court almost total deference if its ruling depends on the evaluation the trial court made on the credibility of the witnesses who testified on the defendant's motion.[12] On the other hand, if the trial court's ruling involved a mixed question of law and fact that did not hinge on the matters of credibility and demeanor, we apply a de novo standard in our review of the ruling.[13]

Here, the record shows that the trial court's ruling hinged on the trial court's decision to find Trooper Turner to be a credible witness. Consequently, unless the record reveals that the opinion Trooper Turner expressed is unsupported by the objective facts he described, we must defer to the ruling the trial court made to deny

---

[11]*State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).
[12]*See State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).
[13]*Id.*

Phipps's motion to suppress the evidence Trooper Turner discovered in Phipps's car after Phipps consented to Trooper Turner's request that he be allowed to search Phipps's car.[14]

*Analysis-Motion to Suppress*

Rule 701 of the Texas Rules of Evidence allows trial courts to admit some types of opinions offered by a lay witness based on what the witness has described when it concerns a matter the witness personally observed.[15] Opinion testimony by a lay witness may be admitted if the opinion the witness offers is an opinion that is rationally based on the witness's perception and helpful to a clear understanding of the witness's testimony or to determining a fact at issue in the dispute.[16] Whether Trooper Turner's testimony is admissible as lay opinion testimony was contested in the hearing. Phipps argued that the trooper's testimony was not admissible based on his argument that Trooper Turner did not have a sufficient opportunity to view Phipps's car as it closed on the trooper's to accurately measure Phipps's speed. According to Phipps, the facts Trooper Turner described are insufficient to support the conclusion the trooper drew from them that Phipps was speeding.

To be clear, as relevant to our review, the question is whether the evidence the officer described allowed the trial court to reasonably resolve whether Trooper

---

[14]*See id.*
[15]Tex. R. Evid. 701.
[16]*Id.*

6

Turner, based on the facts and circumstances he described, allowed the trooper to form a reasonable suspicion to believe that Phipps was speeding.[17] In his brief, Phipps suggests an experienced police officer cannot form a reasonable opinion about the speed at which another vehicle is being driven based on visual observations alone. We disagree. Experienced drivers may form a lay opinion about the speed of other vehicles they observe on a roadway based on the objective facts they describe, and depending on the facts the witness articulates, the facts described may be sufficient for a court to allow a lay witness to express a lay opinion about another vehicle's speed.[18] Whether a lay witness is qualified to express an opinion is governed by Rule 701 of the Texas Rules of Evidence, which provides that a lay witness may testify to an opinion when the witness has drawn the opinion from facts the witness rationally perceived if the opinion is helpful to an understanding of the witness's testimony or to the need the factfinder has to determine a fact at issue in the dispute.[19] As embodied in Rule 701, the question is whether the record shows

---

[17]*See Madden v. State*, 242 S.W.3d 504, 516 n.26 (Tex. Crim. App. 2007) (noting that under Texas law, a fact issue does not exist based simply on the possibility that the jury may choose to disbelieve some or all of the State's evidence).

[18]Tex. R. Evid. 701.

[19]*See id*.; *Curran v. State*, No. 07-10-0078-CR, 2011 Tex. App. LEXIS 935, at *3 (Tex. App.—Amarillo 2011, pet. ref'd) (not designated for publication) (explaining that "[s]peed is one area in which lay opinions may be offered"); *McMillan v. State*, 754 S.W.2d 422, 425 (Tex. App.—Eastland 1988, pet. ref'd) (stating that "[t]he opinions of lay witnesses, when competent, are admissible concerning estimates of age, size, quality, time, and estimates of distance and speed").

that an officer in Trooper Turner's position and given his testimony rationally perceived that Phipps was driving in excess of the posted speed.

Phipps criticizes the trial court's decision to credit Trooper Turner's opinion for four reasons. First, he suggests that Trooper Turner failed to use radar equipment to verify Phipps's speed before pulling him over for speeding. Second, Phipps criticizes the trial court for crediting Trooper Turner's testimony since Trooper Turner acknowledged in the hearing that he had not applied any scientific formulas to verify his estimate of Phipps's speed. Third, Phipps argues that Trooper Turner's impression about Phipps's speed—around 75 m.p.h.—hinged on what he saw while it was night and while obstructions appeared at various times between the cars as Phipps approached Turner's position on the feeder road. Fourth, Phipps argues that Trooper Turner failed to apply the technique of pacing that he described properly, as he had not based his estimate by a comparison between the speed of Phipps's car to the car he was in while driving his car alongside, meaning parallel, to Phipps.

In our opinion, Phipps's arguments go to the weight the trial court chose to give Trooper Turner's testimony and to whether the trial court had the discretion to accept Trooper Turner's testimony as sufficiently reliable to demonstrate that the trooper formed a reasonable suspicion to believe that Phipps was driving his car above the posted speed. While it's true that Trooper Turner couched his opinion in miles per hour and he did not describe his opinion as merely an estimate, the

8

evidence allowed the trial court to view the opinion as an estimate and not a precise mathematical calculation of Phipps's speed. The other facts show the trooper explained he did not use a radar to gage Phipps's speed, and the trooper agreed he did not apply any scientific formulas designed to determine another object's speed. Yet the estimate was not based merely on Trooper Turner's visual impression of Phipps's car, he also tried to match the speed the two cars were being driven as Phipps closed on his position from behind. And the estimate that Trooper Turner described is one that he based on facts he described, all of which he personally observed as Phipps closed on the trooper and then passed him while he was driving on the feeder. Additionally, the fact that there were obstructions at times between the two cars goes to the weight the trial court chose to give Trooper Turner's opinion. And Phipps does not even suggest the trooper's opinion was inadmissible because it was not helpful to a clear understanding of Trooper Turner's testimony about why he stopped Phipps.

While the trial court in exercising its discretion might have chosen not to believe or to credit Trooper Turner's testimony, we must give the trial court's ruling almost complete deference given that the trial court had the right to decide whether the trooper was a credible witness.[20] As the factfinder, the trial court (not this Court) had the right to resolve the discrepancies that Phipps pointed out and to decide

---

[20]*See Garcia-Cantu*, 253 S.W.3d at 241.

whether the testimony should be given any weight. Stated another way, we reject Phipps's suggestion that Trooper Turner had to determine Phipps's exact speed by using a radar or a scientific method rather than offering a lay opinion about his speed to form a reasonable suspicion to believe that Phipps was driving over the posted speed.[21]

In his brief, Phipps relies mainly on *Ford v. State*[22] to support his argument that the record doesn't support the trial court's ruling on his motion to suppress. The case, however, is easily distinguishable. In *Ford*, the Court of Criminal Appeals explained that, when a police officer expresses an opinion about whether another vehicle is following too closely, the record must contain more than the officer's bare opinion to support a ruling denying a motion to suppress.[23] But unlike the record in Phipps's case, the officer's testimony in *Ford* failed to reveal the facts the officer

---

[21]*See Dillard v. State*, 550 S.W.2d 45, 53 (Tex. Crim. App. 1977) (op. on reh'g) ("We disagree with appellants' contention that unless [the officer] knew the exact speed which the automobile was traveling, no violation occurred."); *Infante v. State*, 397 S.W.3d 731, 735-36 (Tex. App.—San Antonio 2013, no pet.) (rejecting argument that the defendant's own calculations proved that officers improperly paced his vehicle and holding that the trial court may resolve discrepancies between time and distance estimates in its ruling); *Icke v. State*, 36 S.W.3d 913, 915-16 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (upholding trial court's ruling shown by the arresting officer's testimony that his opinion about the defendant's speed was one formed based on the officer's experience and without using radar).

[22]*Ford v. State*, 158 S.W.3d at 494.

[23]*Id.* ("The State failed to elicit any testimony pertinent to what facts would allow [the officer] to objectively determine Ford was violating a traffic law.").

relied on when he formed the opinion that he expressed in the trial.[24] Identifying the facts the officer saw in forming the opinion are necessary to the appellate record, as appellate courts require the record to show the police officer articulated the facts on which they relied to form their respective opinions that led them to reasonably believe that "a particular person actually is, has been, or soon will be engaged in criminal activity."[25] Trooper Turner identified those facts in the hearing on Phipps's motion.

Having rejected Phipps's arguments, we conclude the trial court did not abuse its discretion by finding Trooper Turner adequately described the objective facts that he relied when he decided to stop Phipps's car.

*Analysis-Charge Error*

In his second issue, Phipps complains of charge error. He argues the trial court erred by overruling his request to instruct the jury that it needed to decide whether it believed or had a reasonable doubt about whether Trooper Turner stopped Phipps after acquiring a reasonable suspicion to believe that Phipps was speeding.[26] To review a complaint alleging charge error, we must first determine whether the

---

[24]*Id.*
[25]*Id.* at 492.
[26]*See* Tex. Code Crim. Proc. Ann. art. 38.23; Texas Criminal Pattern Jury Charges: General, Evidentiary & Ancillary Instructions 8.6, at 195-196 (2018) (Instruction—Exclusionary Rules—Evidence Obtained as Result of Traffic Stop for Speeding); *see also Madden*, 242 S.W.3d at 508 n.5.

11

alleged error exists.[27] If so, we then determine whether the error caused sufficient harm to merit reversing the judgment.[28]

Under Texas law, the Code of Criminal Procedure requires trial courts to exclude evidence in a trial if the State obtained the evidence by violating the law.[29] But if the evidence shows that a fact issue exists about whether the police conduct was illegal, the jury must resolve whether the police obtained the evidence illegally by submitting an instruction to the jury that asks the jury "if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article…[that it must] disregard any such evidence so obtained."[30]

But to raise a fact issue on the question of speeding, Phipps needed to do more than rely on questions he asked Trooper Turner while cross-examining him in the trial.[31] That's because to demonstrate that the record shows a fact issue existed on speeding, the record must contain affirmative evidence that shows Phipps "did not speed." Trooper Turner never testified in the hearing or at trial that Phipps was not speeding. And no other evidence showing that Phipps was not speeding is in the record before us in Phipps's appeal.[32] Thus, the arguments Phipps raises in his appeal

---

[27]*Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007).
[28]*Id.*
[29]Tex. Code Crim. Proc. Ann. art. 38.23.
[30]*Id*. art. 38.23(a).
[31]*See Madden*, 242 S.W.3d at 514.
[32]*Id*. at 513-14.

merely complain that Trooper Turner should have done more than he did to support the opinion he expressed in the trial. Since the record contains no affirmative evidence from which a jury could have reasonably concluded that Phipps was not speeding, we hold the trial court had no duty to instruct the jury to decide whether Trooper Turner conducted a legal stop.[33]

For the reasons explained above, we overrule Phipps's second issue.

Conclusion

We hold that Phipps's issues lack merit. Accordingly, the trial court's judgment is

AFFIRMED.

_____<br>
HOLLIS HORTON<br>
Justice

Submitted on August 10, 2020
Opinion Delivered January 27, 2021
Do Not Publish

Before Golemon, C.J., Kreger and Horton, JJ.

---

[33]*Id.*